WALLACE, Judge.
Tamara Costello, individually and as co-personal representative of the estate of Scott Davis, deceased, appeals the trial court’s order awarding The Law Offices of Omar F. Medina, P.A., $50,000 in attorney’s fees and $4371.51 in costs for services rendered in a wrongful death action. The contingent fee agreement pursuant to which Mr. Medina claimed entitlement to the fees and costs awarded was signed by Gary Davis, the other co-personal representative of the estate, but it was never signed or otherwise ratified by Mrs. Costello. Because co-personal representatives are required to act jointly and because Mr. Medina did not have a separate fee agreement with Mrs. Costello, we reverse the trial court’s order to the extent that it awarded Mr. Medina fees and costs from Mrs. Costello’s share of the settlement of the wrongful death action. We also hold that Mrs. Costello is entitled to interest on the amount of fees and costs withheld from her share of the recovery.

Facts and Procedural History

On or about July 9, 2000, Scott Davis and Christopher Lain stayed overnight at the Odessa home of Jeremiah Faust, a nineteen-year-old friend. Scott was also nineteen years old, and Christopher was sixteen. The home was owned by Jeremiah’s father, Thomas J. Faust, but he was not at home that night. Following a series of events not material to the disposition of this appeal, Scott and Christopher were found dead in the living room of the Faust residence the next day. Jeremiah survived the incident.
Scott Davis died intestate. He was survived by his parents, Mr. Davis and Mrs. Costello, who are divorced. Each of the parents employed separate counsel to represent them on their claims arising from Scott’s death. Mr. Davis was represented by Omar F. Medina of The Law Offices of Omar F. Medina, P.A. Raymond N. Sea-ford of The Law Office of Ken Ward, P.A., represented Mrs. Costello.
Mr. Faust had a homeowner’s policy of insurance in effect at the time of the incident. The limits of liability per occurrence for bodily injury and death were $300,000. On June 19, 2001, a little less than one year after the incident, Mr. Faust’s insurance carrier tendered the $300,000 policy limits to the Davis and Lain families equally in full settlement of all claims. Neither of the families accepted the offer.
On July 5, 2001, Mr. Davis entered into a contingent fee agreement with The Law Offices of Omar F. Medina, P.A., for representation in connection with the wrongful death of Scott Davis. The agreement provided that Mr. Medina would receive as compensation for his services 33]é% of any recovery up to one million dollars through the time of filing an answer and 40% of any recovery up to one million dollars from the time an answer was filed through trial. Mrs. Costello, who was represented by Mr. Seaford, was not identified in the agreement, nor did she sign it. One week later, on July 12, 2001, Mr. Davis filed an action for the wrongful death of Scott Davis against Mr. Faust and against a dissolved Florida corporation with which Mr. Faust was associated. The complaint identified Mr. Davis and Mrs. Costello as the decedent’s survivors and included the following allegation: “Gary Davis is the Personal Representative of the ESTATE OF SCOTT DAVIS with the probate of the Estate being filed in the Circuit of Hills-borough County, Florida.”
In fact, Mr. Davis had not yet been appointed as the personal representative of his son’s estate either when he signed the contract with Mr. Medina’s office or when the complaint was filed. Nor would he be the sole personal representative. Mr. Davis and Mrs. Costello had filed com *1181 peting petitions for administration seeking to be appointed as the personal representative of their son’s estate. On October 1, 2001, Mr. Davis and Mrs. Costello resolved their dispute about who would be appointed by stipulating to the appointment of both of them as co-personal representatives. On October 4, 2001, the probate division of the Hillsborough. County Circuit Court appointed Mr. Davis and Mrs. Costello as co-personal representatives of the estate of Scott Davis, deceased. Letters of administration issued the same day. The letters of administration issued to Mr. Davis and Mrs. Costello included the following pertinent provision affixed by a rubber stamp: “Personal Representative is prohibited from, entering into, any settlement without prior authorization by the Probate Court. Copy of these Letters are required to be filed in the wrongful death proceeding.”
Despite the appointment of joint personal representatives, Mr. Medina did not take steps to have Mrs. Costello, the other co-personal representative, added as a party plaintiff in the pending wrongful death action. Mr. Medina did not comply with the probate court’s order to file a copy of the letters of administration in the wrongful death proceeding. Counsel for Mr. Faust would subsequently testify that he did not learn until after the case was settled that Mr. Davis and Mrs. Costello had been appointed as co-personal representatives or that Mr. Davis was not, as he had previously alleged' in his complaint, the sole personal representative of the estate.
Meanwhile, the wrongful death action filed by Mr. Davis continued its progress in the trial court. Both defendants responded to the complaint with motions to dismiss. Because these motions were never disposed of, the defendants did not file answers to the complaint. Nevertheless, Mr. Medina took discovery and otherwise investigated the' case. On April -1, 2002, Mr. Faust served a proposal for settlement pursuant to Florida Rule of Civil Procedure 1.442 to settle the case for $150,000, the' same amount that had been offered before suit was filed. The proposal was not conditioned on court approval of the sfettlement. Mr. Medina did not notify Mrs. Costello or her counsel of the receipt of the proposal for settlement. They were 'riot aware of the proposal and did not consent to its acceptance. Nevertheless, on April 29, 2002, Mr. Medina servéd a notice accepting the proposal for settlement on behalf of Mr. Davis as personal representative. None of the parties to the wrongful death action petitioried the court for approval of the settlement.
Mr. Faust’s counsel forwarded to Mr. Medina the carrier’s check for $150,000 and a release. On April 22, 2002, Mr. Davis, acting as “personal representative of the estate of Scott Davis,” executed a document intended to release Mr. Faust and Jereririah Faust from all claims in connection with the incident. On May 7, 2002, Mr. Medina’s office and Mr. Davis, referred'to in the document as “administrator of the estate of Scott Davis,” executed a closing statement reflecting the disbursement of the settlement proceeds as follows:
Total Recovery $150,000.00
Attorney’s — Fees-Law Offices of Omar F. Medina (40%) $ 60,000.00
Total Costs[1] $ 4,371.51
Total Attorney’s Fees and Costs $ 64,371.51
Net to Estate $ 85,628.49
Although the closing statement reflects a disbursement of $85,628.49 to the estate of Scott Davis, the estate did not actually receive any funds beeáuse Mr. Davis and Mr. Medina allocated the entire recovery to Mr. Davis and Mrs. Costello in equal *1182 shares and apportioned the fees and costs charged by Mr. Medina against those shares. Mr. Medina’s fees and costs, amounting to $64,371.51, and Mr. Davis’s share, amounting to $42,814.25 ($85,628.49 + 2 = $42,814.25), were promptly disbursed from the recovery.
Mr. Seaford had sent letters to Mr. Medina on November 18, 2001, December 11, 2001, and January 23, 2002, requesting information about the status of the wrongful death action. Mr. Medina made no written response to this correspondence.[2] On May 14, 2002, shortly after Mr. Davis had settled the case, Mr. Seaford wrote to Mr. Medina again requesting information about the status of the case. This time Mr. Medina responded promptly with a letter to Mr. Seaford informing him that the case had been settled and offering to send a check for Mrs. Costello’s share of the recovery “after payment of fees and costs.” On behalf of Mrs. Costello, Mr. Seaford objected to the deduction of any fees and costs from her share of the recovery and demanded payment of $75,000. After a further exchange of correspondence, Mr. Medina sent Mr. Seaford a check payable to Mrs. Costello in the amount of $42,814.24, representing the undisputed portion of Mrs. Costello’s share of the recovery.
On July 8, 2002, Mrs. Costello filed her own wrongful death action against Mr. Faust and Jeremiah Faust. She alleged in her complaint that she was one of the co-personal representatives of the estate of Scott Davis, deceased, and she attached to the complaint a copy of the letters of administration issued to both Mr. Davis and Mrs. Costello as co-personal representatives. Alerted by the filing of the second lawsuit that something was amiss, counsel for Mr. Faust filed a motion in the prior wrongful death action filed by Mr. Davis, seeking court approval of the settlement that had already been concluded. Mr. Davis joined in this motion.[3]
The trial court conducted an evidentiary hearing on the motions to approve the settlement. Mrs. Costello objected to approval because she had not had an opportunity to participate and because Mr. Davis had not pursued a claim against Jeremiah Faust. The trial court approved the settlement because Mr. Faust had relied to his detriment upon Mr. Medina’s representations that Mr. Davis had the authority to act alone in matters involving his son’s estate, including the acceptance of the proposal for settlement. See § 733.615(3), Fla. Stat. (2001). No one has appealed the trial court’s order approving Mr. Davis’s settlement of the wrongful death action. Therefore, we are not called upon to decide the propriety of the allocation Mr. Davis made of the recovery among the estate and the survivors or whether Mr. Faust was entitled to the protection of section 733.615(3) under the circumstances of this case.
The trial court held a subsequent hearing on Mr. Medina’s request for approval of his attorney’s fees and costs.[4] Mr. *1183 Medina’s request was the only one before the court for decision because Mr. Sea-ford did not seek a fee.[5] Noting that Mr. Davis had acted alone in signing the contingent fee agreement, counsel for Mrs. Costello argued that the agreemeht was not binding on the estate because both of the co-personal representatives had not signed it as required by section 733.615(1). The trial court rejected this argument, declaring that principles of equity authorized it to rule that — despite the conceded noncompliance with the statutory command — the contract nevertheless bound the estate.[6] The trial court did reject Mr. Medina’s claim for a 40% contingency fee because the case settled before an answer was filed, but it ordered that Mr. Medina was.entitled to a 33/é% contingency fee, amounting to $50,000, and costs of $4371.51. Since Mr. Medina had already received a $60,000' fee, the trial court ordered him to refund the $10,000 overpayment equally to Mr. Davis and Mrs. Costello. The trial court rejected Mrs. Costello’s request for interest on her share of the overpayment. Mrs. Costello timely appealed the trial court’s order on attorney’s fees and costs.

Analysis

With certain exceptions not applicable here, joint personal representatives are required to act in concert.[7] § 733.615(1); Messina v. Scionti,. 406 So.2d 529, 532 (Fla. 2d DCA 1981) (construing . an earlier version of section 733.615(1)). The requirement that joint personal representatives act in concert extends to the- employment of counsel. Rand v. Giller, 489 So.2d 796,' 797 -n. 4 (Fla. 3d DCA 1986). It also applies to the initiation of legal proceedings. Pearce v. Foster, 454 So.2d 721 (Fla. 4th DCA 1984) (declining to reach the merits of appeal filed by one of two co-personal representatives and relinquishing jurisdiction to trial court for determination of whether co-personal representative’s refusal to join in appeal constituted cause for her removal).
In this case, Mr. Davis had no authority to bind the estate because Mrs. Costello, the other co-personal representative, did not join in the execution of the contingent fee agreement with Mr. Medina’s office. § 733.615(1); Rand, 489 So.2d at 797 n. 4. Mr. Davis’s contract with Mr. Medina bound only Mr. Davis, not the ■ estate. Consequently, Mr. Medina is entitled to have his percentage fee paid from Mr. Davis’s share of the recovery, but not from the estate.' Moreover, Mr. Medina is not entitled to a fee from Mrs. Costello’s portion of the settlement because he did not have a contract with her. See R. Regulating Fla. Bar 4 — 1.5(f)(2); Perez v. George, Hartz, Lundeen, Flagg & Fulmer, 662 So.2d 361, 363-64 (Fla. 3d DCA 1995).
*1184 Mr. Medina’s failure to bind the estate or Mrs. Costello to the contingent fee agreement is a predicament of Mr. Medina’s own making. Under the circumstances of this case,, there are no principles of equity that would justify awarding him a fee from Mrs. Costello’s share of the settlement. On our own initiative,[8] we have considered the common fund rule and find it inapplicable. See Perez, 662 So.2d at 364; Adams v. Montgomery, Searcy & Denney, P.A., 555 So.2d 957, 958 (Fla. 4th DCA 1990); see generally Hurley v. Slingerland, 480 So.2d 104, 107-08 (Fla. 4th DCA 1985).

Relief

Therefore, we reverse the trial court’s order to the extent that it awarded Mr. Medina an attorney’s fee from the $75,000 portion of the recovery allocated to Mrs. Costello. We also reverse the award of costs from Mrs. Costello’s portion. Finally, we hold that Mrs. Costello is entitled to interest on the amount of fees and costs withheld from her portion of the settlement from May 7, 2002, the date of the closing statement. See Moreno v. Allen, 692 So.2d 957, 958 (Fla. 3d DCA 1997).
Reversed and remanded to the trial court for further proceedings consistent with this opinion.
KELLY and VILLANTI, JJ., concur.

. The itemized accounting of the costs attached to the closing statement is omitted.

. Mr. Medina would subsequently testify that he did respond by leaving “three or four messages’’ for Mr. Seaford’s employer, Ken Ward. However, he did not state that he ever spoke with Mr. Ward.

. Both parties disregarded the order of the probate court that any motion for approval of a settlement be filed in the probate division, not the civil division.

.We note that in settling claims for wrongful death, motions for approval of attorney's fees and costs for services to the personal representative and survivors should ordinarily be considered at the same time as the motion for approval of the settlement. Neither the court nor the parties are able to assess accurately the advantages and disadvantages of a proposed settlement without specific information concerning the amount of any attorney’s fees *1183 and costs to be paid from the settlement proceeds and how such fees and costs will be apportioned among the estate and the survivors.

. Mr. Seaford said that he could not claim a fee "in good conscience” because "walking into this thing, there was already $.150,000 on the table.”

. Although unexpressed, the trial court’s evident intent was to apportion the estate’s asserted liability for fees and costs to the shares of the recovery allocated to Mr. Davis and Mrs. Costello. § 768.26, Fla. Stat. (2001); Wiggins v. Estate of Wright, 850 So.2d 444 (Fla.2003); Catapane v. Catapane (In re Estate of Catapane), 759 So.2d 9 (Fla. 4th DCA 2000).

. The Honorable Joseph Nesbitt, a retired judge of the Third District Court of Appeal, has written ah article criticizing the practice of appointing multiple personal representatives as inefficient, wasteful, and fraught with potential problems. See Joseph Nesbitt, One Personal Representative Is Enough, 54 Fla. B.J. 140 (Feb.1980). The facts of this case tend to support Judge Nesbitt’s thesis.

. The appellees have not submitted an answer brief, even after this court granted an extension of time in response to a representation made by the appellees' counsel of record, Mr. Medina, that a brief would be filed on their behalf. The failure of an appellee to submit a brief, as this court has stated, "places an undue burden on the appellate court and re-fleets an omission of appellee’s responsibility to support the trial court. If the ruling of the trial court is not worthy of support, then appellee ought to confess error and join with the appellant in seeking reversal.” Geisler v. Geisler, 397 So.2d 1216, 1217 n. 1 (Fla. 2d DCA 1981).